**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| AMONE BANKS, <br><br> Plaintiff, <br><br> v. <br><br> GREGORY HARRISON, in his official capacity as an employee of the Court Services and Offender Supervision Agency, <br><br> Defendant. | Civil Action No. 12-00622 (BAH) <br> Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Amone Banks ("Plaintiff"), an employee of the Court Services and Offender Supervision Agency ("CSOSA"), filed a lawsuit in the D.C. Superior Court against his former supervisor at CSOSA, Gregory Harrison ("Defendant"), seeking both a Temporary Restraining Order ("TRO") and a Preliminary Injunction ("PI") following an incident in which he felt threatened when Defendant allegedly confronted him in his workspace in a threatening and aggressive manner. *See* Complaint ("Compl."), Motions for PI and TRO ("Pl.'s Motions"), ECF No. 1-1, Ex. A. Defendant removed the case to this Court because Defendant is an officer of the United States pursuant to 28 U.S.C. § 1442(a)(1) and was acting in his official capacity during the alleged incident. *See* Notice of Removal, ECF No. 1; Certification of Daniel Van Horn, Acting Chief of the United States Attorney's Office for the District of Columbia's Civil Division, ECF No. 1-2, Ex. B. Defendant then filed a Motion to Dismiss Plaintiff's claims pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). *See* ECF No. 4. Since Defendant noted in his Motion to Dismiss that Plaintiff had been transferred to another unit in CSOSA, and was no longer directly supervised by Defendant, the Court ordered Plaintiff to show cause why

1

the TRO and PI were not moot.  *See* ECF No. 5 at 4.  In response to the Court's Order and Defendant's Motion to Dismiss, Plaintiff filed a voluminous 75-page Response to Motion to Dismiss Temporary Restraining Order ("Pl.'s Response"), ECF No. 6.  Upon consideration of Defendant's Motion to Dismiss, ECF No. 4, Plaintiff's Response, ECF No. 6, and the entire record herein, and for the reasons explained below, the Court will deny Plaintiff's TRO and PI and dismiss the case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a Community Service Officer ("CSO") for CSOSA whose job, in part, consists of making field visits to offender's homes.  *See* Affidavit of Gregory Harrison ("Harrison Aff."), ECF No. 4-3, Ex. 1, ¶ 8.  This lawsuit arises out of a single workplace incident that took place on April 9, 2012 in which Plaintiff felt uncomfortable and threatened by Defendant, who was Plaintiff's second-level supervisor from December 7, 2011 to April 12, 2012.  *Id.* ¶ 3.  Specifically, Plaintiff alleges that, after an exchange of emails with Defendant, Defendant confronted Plaintiff in Plaintiff's "office space" about "how they do things in [Defendant's] branch," and then followed Plaintiff to his cubicle.  Compl.  Plaintiff alleges that Defendant continued to talk to Plaintiff although Plaintiff made it clear that he did not feel comfortable having the conversation "without union representation."  *Id.*  Plaintiff claims that he told Defendant, "I have work to do, at what time [Defendant] stated, 'what you [ain't] going to do is disrespect me.'" [sic].  *Id*.  Plaintiff alleges that Defendant then "came at" him in a very aggressive and threatening manner.  *Id.*

Defendant denies Plaintiff's allegations, *see* Harrison Aff. ¶ 6, and recounts a different version of his interaction with Plaintiff on April 9, 2012.  Following an exchange of emails over

a workplace policy, Defendant alleges that he stopped by Plaintiff's workspace to ask whether Plaintiff had seen his latest email.  *Id.* ¶ 13.  Defendant notes that he "explained to [Plaintiff] that he had been informed on several occasions of the field visit protocol within our branch and that he is expected to follow his supervisor's directives."  *Id*.  Defendant describes an exchange between the parties in which Plaintiff stated that he did not feel comfortable talking without his union representative, and yet Defendant continued to talk with Plaintiff about his need to follow office policies related to, *inter alia*, personal vehicle use for field visits.  *Id*. ¶ 14.  Defendant admits to saying "what you will not do is disrespect me," *id.*, but denies "mov[ing] aggressively towards or threaten[ing] Plaintiff."  *Id*.

Following this workplace incident, on April 10, 2012, Plaintiff filed a one-paragraph *pro se* Complaint, as well as Motions for a TRO and a PI, against Defendant in the Superior Court for the District of Columbia.  Compl.; Pl.'s Motions.  Plaintiff sought a stay-away order and an order that Defendant only communicate with him by email.  Pl.'s Motions.  Defendant removed the case to this Court because Defendant is a federal employee who was acting within the scope of his office or employment at the time of the allegations giving rise to the Complaint.  *See* Notice of Removal, ECF No. 1; Certification of Daniel Van Horn, Acting Chief of the United States Attorney's Office for the District of Columbia's Civil Division, ECF No. 1-2, Ex. B; 28 U.S.C. § 1442(a)(1).  Defendant then filed a Motion to Dismiss.  ECF No. 4.

In response, as noted, Plaintiff filed a 75-page Response to Motion to Dismiss Temporary Restraining Order.  ECF No. 6.  In that Response, Plaintiff details that he continues to feel threatened by Defendant, fears for his personal safety, and believes that Defendant has a "personal vendetta" against him.  *See* Pl.'s Response at 2-3, 9, 13, 20, 21.  Plaintiff's allegations focus primarily on the workplace incident on April 9, 2012, as described above, and also on an

3

incident on March 9, 2012, in which Plaintiff felt threatened when Defendant "became inflamed" and said, "I'm going to pay my mortgage, that's what I'm going to do. As a Washingtonian and as a street dude, who knows what do in the street." [sic]. *Id.* at 2. Plaintiff also details steps he has taken at work in response to the tension with Defendant, including, *inter alia*, seeking Employment Assistance Program help with stress and filing grievance paperwork. *Id.* at 3-4.[1]

## II.   STANDARD OF REVIEW

### A.   Motions for Injunctive Relief

To warrant injunctive relief, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011). The purpose of temporary injunctive relief "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Temporary injunctive relief, as an extraordinary form of relief, "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citations omitted).

Since the irreparable harm factor disposes of Plaintiff's Motions, the Court focuses on whether Plaintiff, absent a TRO or PI, will suffer irreparable harm. As is well established, "[t]he irreparable injury requirement erects a very high bar for a movant." *Coal. for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008) (citing *Varicon Int'l*

---

[1] Plaintiff alleges that these workplace incidents, and Plaintiff's concerns about Defendant, have caused Plaintiff considerable stress and fear. Plaintiff notes, for example, that his "mental health has been harmed to the point he sought counseling . . . to deal with the stress of the defendant's threats and/or fear of retaliation . . . " Pl.'s Response at 13. Plaintiff also states that he "will be following up with his counseling session Veteran Administration Hospital in Washington, D.C. [sic]. Prior to the incident, the plaintiff had [no] mental health issues. Since the incident, the plaintiff has a hard time sleeping at night, can not focus at work, having marital issues, increased is intake of alcohol, and constant worrying of retaliation." [sic]. *Id.*

*v. Office of Pers. Mgmt.*, 934 F. Supp. 440, 447 (D.D.C. 1996)).  "A plaintiff must show that [he] will suffer harm that is 'more than simply irretrievable; it must also be serious in terms of its effect on the plaintiff.'"  *Coal. for Common Sense in Gov't Procurement*, 576 F. Supp. 2d at 168 (quoting *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981).  "To warrant emergency injunctive relief the alleged injury must be certain, great, actual, and imminent."  *Coal. for Common Sense in Gov't Procurement*, 576 F. Supp. 2d at 168 (citing *Wisconsin Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

    **B.**    **Subject-Matter Jurisdiction under FED. R. CIV. P. 12(b)(1)**

On a motion to dismiss for lack of subject-matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Mostofi v. Napolitano*, No. 11–0727, 2012 WL 251922, at *2 (D.D.C. Jan. 27, 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  As the Supreme Court has explained "many times," the "district courts of the United States . . . are 'courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.'"  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Micei Int'l v. DOC*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) ("[T]wo things are necessary to create jurisdiction in an Article III tribunal other than the Supreme Court . . . The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it.*") (internal citations and quotation marks omitted).  When a court lacks subject-matter jurisdiction, it must dismiss the case.  *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 48 (D.D.C. 2011); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

### III.    DISCUSSION

#### A.    Motions for Injunctive Relief

As noted, Plaintiff filed both a TRO and a PI along with his one-page Complaint in D.C. Superior Court.  *See* Compl.; Pl.'s Motions.  Plaintiff alleges at length in his Response to the Motion to Dismiss that he continues to feel threatened by his former supervisor at CSOSA, and fears retaliation.  *See* Pl.'s Response at 2-3, 9, 13, 20, 21.  Upon review of the record, however, the Court concludes that Plaintiff will not suffer irreparable harm, or any harm, in the absence of a TRO or PI for the following reasons.  First, since the filing of his Complaint, Plaintiff was voluntarily transferred to a different work location, and has been assigned a different CSOSA supervisor.  Harrison Aff. ¶¶ 16-17; Mot. to Dismiss, ECF No. 4-5, Ex. 3, Aff. of Clyde Burnette ¶¶ 3, 5-6.  Second, Plaintiff, even after filing this lawsuit, continues to work as a CSO with the same pay as before he filed the Complaint.  Harrison Aff. ¶ 16.  As a result, Plaintiff faces no imminent prospect of harm and has suffered no financial loss.  *Id.* ¶¶ 16-18.  Since the likelihood of Defendant being in close contact or proximity to Plaintiff has been minimized (although not eliminated), *see id.*, and since Plaintiff has not alleged any other workplace incident with Defendant besides the ones described above, which do not lead the Court to believe that Plaintiff is in danger of physical harm by Defendant, and because Plaintiff has not alleged *any* incident where Defendant has acted aggressively towards him outside of work, the Court finds that Plaintiff will not suffer irreparable harm if a TRO or PI is not issued.  Therefore, the Court dismisses Plaintiff's motions for interim injunctive relief.

#### B.    Subject-Matter Jurisdiction

Having denied the TRO and PI, the Court now turns to Plaintiff's underlying Complaint.  In his Complaint, as described *supra*, Plaintiff describes a workplace incident in which he felt

threatened because Defendant "came at" him in a very aggressive and threatening manner. Compl.  The Court construes Plaintiff's Complaint as alleging common law assault, as in *Koch*, where the court characterized conduct as an assault where the plaintiff allegedly feared physical harm from the defendant's shouting, pointing his finger, and threatening legal action.  *Koch v. United States*, 209 F. Supp. 2d 89, 94 (D.D.C. 2002); *see also Kaiser v. U.S.*, 761 F. Supp. 150, 155 (D.D.C. 1991) ("An assault results from apprehension of an imminent harmful or offensive contact . . . ").

Since Defendant was acting in his official capacity as an employee of the United States during the alleged incident, the Court only has subject-matter jurisdiction over Plaintiff's claims if Congress has passed a statutory waiver of sovereign immunity.  *See Block v. North Dakota*, 461 U.S. 273, 287 (1983).  The Federal Tort Claims Act ("FTCA"), which Plaintiff does not invoke in his Complaint, is such a waiver.  *Koch*, 209 F. Supp. 2d at 94.  The FTCA permits common law tort claims to be asserted against the federal government, subject to certain conditions.  28 U.S.C. §§ 1346(b), 2671-2680.

Plaintiff, however, cannot recover under the FTCA because the FTCA "expressly excludes claims 'arising out of assault . . . '"  *Tolson v. Stanton*, No. 12-0120, 2012 U.S. Dist. LEXIS 21967, *9-10 (D.D.C. Feb. 22, 2012) (quoting 28 U.S.C. 2680(h)); *see also Koch*, 209 F. Supp. 2d at 94 (dismissing plaintiff's assault claim as not cognizable under the FTCA), *aff'd*, No. 02-5222, 2002 U.S. App. LEXIS 27289, at *2-3 (D.C. Cir. Dec. 31, 2002) (per curiam) ("Because appellant's claims, which arise out of an alleged assault, are not cognizable under the FTCA, *see* 28 U.S.C. § 2680(h), the district court properly dismissed appellant's complaint").[2]

---

[2] The "arising out of assault" exception to the FTCA does not apply "to acts or omissions of investigative or law enforcement officers of the United States Government."  *See* 28 U.S.C. 2680(h).  This proviso on the "arising out of assault" exception, however, does not apply in the instant case because Defendant is not a law enforcement officer within the definition of the FTCA.  *See id.*; Harrison Aff. ¶ 2.  Since Defendant does not have the authority to

Accordingly, because Plaintiff's claims against Defendant are not cognizable under the FTCA, this Court lacks subject-matter jurisdiction and must dismiss the case.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motions for a TRO and PI and dismisses this case for lack of subject-matter jurisdiction.

---

"execute searches, to seize evidence, or to make arrests for violations of Federal law," Defendant is not an "investigative or law enforcement officer" for purposes of the proviso.  Harrison Aff. ¶ 2; *see* 28 U.S.C. 2680(h).